## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 22 2016, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Victor Karp, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 22, 2016 <br><br> Court of Appeals Case No. 15A04-1601-CR-32 <br><br> Appeal from the Dearborn Superior Court <br><br> The Honorable Jonathan N. Cleary, Judge <br><br> Trial Court Cause No. 15D01-1412-F4-71 |

**Najam, Judge.**

## Statement of the Case

Victor Karp appeals his conviction for burglary, as a Level 4 felony, and his sentence following a jury trial. Karp raises three issues for our review:

1.   Whether the State presented sufficient evidence to support his conviction.

2.   Whether the trial court abused its discretion when it sentenced him.

3.   Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## Facts and Procedural History

On December 4, 2014, Billy Buckingham lived in Lawrenceburg. Buckingham was sixty-one years old at the time and used a walker. He kept two small safes near a window in his bedroom. He also kept a very large whisky bottle full of loose change near the same window. Buckingham estimated that he had about $100 in coins in that bottle.

Around 4:00 p.m., Jessica Hopkins, who had a very close relationship with Buckingham and called him "Uncle Billy," though they were not related, asked Buckingham for $40, which he refused to give her. Tr. at 401. Around 5:30 p.m., Buckingham went into his home's computer room, where he stayed for about thirty minutes.

[5]     Hopkins knew of Buckingham's safes and bottle of coins. Around 5:30 that evening, she and her boyfriend, Karp, went to Buckingham's house "to get the safe." *Id.* at 484. They went to the bedroom window near the safe and bottle, and Hopkins "lifted the window and took out the safe," which she "handed . . . to [Karp]." *Id.* at 485. Hopkins then "[g]rabbed the jar of money." *Id.* Hopkins and Karp then placed the items in a nearby garbage can and took them to the house of a mutual friend, Sabrina Walker.

[6]     At Walker's house, the safe was opened. Various items were inside the safe, including a magnet. Hopkins and Karp then transferred the coins from the whisky bottle to a large coffee mug that belonged to Walker, and they went to a nearby Wal-Mart to exchange the coins for bills at a Coinstar machine. Hopkins and Karp received about $100 for the coins.

[7]     Around 6:00 p.m., Buckingham went into his bedroom and immediately noticed the missing safe and bottle. He also noticed that the nearby window had been tampered with. Accordingly, Buckingham called the Lawrenceburg Police Department. Officer Daniel Rosengarn responded around 7:20 p.m. Officer Rosengarn observed two sets of fresh footprints in the mud directly below the bedroom window. Thereafter, officers contacted the local Wal-Mart for surveillance footage of its Coinstar machine. That video showed Hopkins and Karp exchanging about $100 in coins from a large coffee mug around ninety minutes after the burglary had occurred.

[8] In March of 2015, Walker, who had been arrested on other charges, approached Lawrenceburg Police Department Detective Jeremy Shepherd and explained the events at her house that had occurred on December 4th, and she explained how Hopkins and Karp had committed their burglary. Among other details, Walker informed Detective Shepherd that Hopkins and Karp had thrown away the shoes they had been wearing during the burglary because they had stepped in mud.

[9] Walker gave Detective Shepherd permission to enter her house. There, Detective Shepherd discovered Buckingham's magnet and other items from Buckingham's safe. Detective Shepherd also discovered the large coffee mug that matched the mug used by Hopkins and Karp at the Coinstar machine.

[10] The State charged Karp with burglary, as a Level 4 felony, and for being a habitual offender. The State also charged Hopkins with burglary, and she pleaded guilty. Prior to Karp's trial, the trial court informed him that, if he too pleaded guilty, the court would consider his plea a significant mitigator in its sentencing decision and cap his sentence at twenty years. But Karp did not plead guilty and instead exercised his right to a jury trial. After that trial, the jury found him guilty, and the court sentenced him to the advisory term of six years for burglary, as a Level 4 felony, enhanced by an additional eighteen years for being a habitual offender. This appeal ensued.

# Discussion and Decision

## *Issue One:  Sufficiency of the Evidence*

[11]    Karp first asserts that the State failed to present sufficient evidence to demonstrate that he committed burglary, as a Level 4 felony.  Our standard of review for sufficiency of the evidence claims is well-settled.  *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict.  We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction.  Under our appellate system, those roles are reserved for the finder of fact.  Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations and internal quotation marks omitted).  To show that Karp committed burglary, as a Level 4 felony, the State was required to show that Karp aided Hopkins in breaking and entering the dwelling of another person, with the intent to commit a theft in it.  Ind. Code §§ 35-41-2-4, 35-43-2-1(1) (2014).

[12]    According to Karp:  "the State had to show not just that he possessed the spoils from the crime, but that he assisted [Hopkins] in taking those items.  The State presented only unreliable evidence of Karp's presence at the crime scene."  Appellant's Br. at 15.  As such, Karp continues, his burglary conviction should be reduced to a conviction for receiving stolen property.

We cannot agree. Karp's entire argument on appeal rests on having this court discredit Walker's testimony against him while also having us emphasize parts of Hopkins' testimony over other parts and over other evidence. Meanwhile, Karp ignores the evidence most favorable to the verdict, which plainly shows that he aided Hopkins in the commission of the burglary. In other words, Karp's only argument on appeal is merely a request for this court to reweigh the evidence, which we will not do. We affirm Karp's conviction for burglary, as a Level 4 felony.

## *Issue Two: Abuse of Discretion in Sentencing*

Karp next asserts that the trial court abused its discretion when it sentenced him. According to Karp, because the court informed him prior to trial that it would consider any guilty plea to be a significant mitigating factor during sentencing, in effect the court penalized him for exercising his right to a jury trial when it sentenced him to a twenty-four-year aggregate term after the trial than rather than the twenty-year term the court stated it would have sentenced him to had he pleaded guilty prior to the trial.

Karp's argument is specious and not supported by cogent reasoning. It has long been the law that a guilty plea is generally entitled to significant mitigating weight when it saves the State and the defendant's victims the time and costs of a trial. *E.g.*, *Sensback v. State*, 720 N.E.2d 1160, 1164-65 (Ind. 1999). A defendant who chooses to exercise his right to a jury trial does not undertake a risk-free proposition, and, if he is found guilty, he is not entitled to those same considerations. We reject Karp's purported argument on this issue.

## *Issue Three: Inappropriateness of Sentence*

[16]    Finally, Karp asserts that his twenty-four-year aggregate sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) permits an Indiana appellate court to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). The principal role of appellate review is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). A defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007).

[17]    We initially note that, for a Level 4 burglary, Karp faced a maximum possible term of twelve years. I.C. § 35-50-2-5.5. Karp received the advisory term of six years. For being a habitual offender, Karp faced a maximum possible enhancement of twenty years. I.C. § 35-50-2-8(i)(1). Karp received an enhancement of eighteen years. In pronouncing Karp's sentence, the trial court found as aggravating factors Karp's lengthy criminal history; his numerous probation violations; Karp "laughing" on three different occasions during the trial, including while Buckingham was testifying about his disability; and the

"high" amount of "damage" done to the victim by the burglary of his residence. *Id.* at 715-22. The court found no mitigating circumstances.

[18] We cannot say that Karp's sentence is inappropriate.[1] Regarding the nature of the offense, Karp aided Hopkins in the burglary of an elderly and disabled family friend while the victim was in his residence. And, regarding his character, Karp, who is twenty-seven years old, has an extensive criminal history, which includes the following:

- two adjudications as a delinquent child for acts that would have been felonies if committed by an adult;

- three adult misdemeanor convictions;

- two adult felony convictions, namely, burglary, as a Class C felony, and robbery, as a Class C felony; and

- seven probation violations.

We agree with the State that Karp's criminal history demonstrates "a constant refusal to conform his behavior to the requirements of the law and orders of the court," which reflects poorly on his character. Appellee's Br. at 19. We cannot say his twenty-four-year sentence is inappropriate in light of the nature of the offense or his character.

---

[1] Insofar as Karp's argument regarding the inappropriateness of his sentence overlaps with his argument under Issue Two, we do not consider it.

Affirmed.

Robb, J., and Crone, J., concur.